John Thomas **MITSCHKE**, Appellant,

v.

The **STATE** of Texas.

No. 2243–01.

Court of Criminal Appeals of Texas.

March 10, 2004.

---

Lane D. Thibodeaux, Bryan, for appellant.

Douglas Howell, III, Assist. DA, Bryan, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which PRICE, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., join.

■ "The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decision, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Thus says *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4th Cir.1973). In support of this statement there is no citation to statute or case law or any other legal authority; there is merely the assertion that it is so. There appears to be no supporting legal authority for that statement, but it is on this statement that the court of appeals based its opinion. We conclude that, while *Cuthrell's* standard for determining whether a consequence is direct or collateral has little, if any, support in law and does not accurately describe the distinction, the court of appeals was correct in affirming the judgment of the trial court.

Just before trial began, the state elected to abandon count one of the indictment, and appellant pled guilty to count two, indecency with a child, with the jury to assess punishment. At the time of pleading, the trial court determined that appellant was competent to enter the plea and that there was no agreement as to punishment. It admonished appellant as to the charges against him, the range of punishment, and the possibility of deportation if

he were not a citizen, but did not admonish appellant as to required registration as a sex offender.

■ Appellant asserted on appeal that his plea was involuntary because the failure to admonish as to the registration requirement violated due process. The court of appeals found that registration was a collateral consequence of his plea and, therefore, failure to admonish as to that consequence did not violate appellant's due process rights. Appellant now presents us with the same claim, alleging violation of the fifth and fourteenth amendments to the United States Constitution and Article I, §§ 10 and 19 of the Texas Constitution. He argues specifically that, because registration is a direct consequence of his plea, failure to admonish renders his plea invalid. Because appellant has not argued that the two constitutions offer different levels of protection, we will consider only the federal constitutional claim. *Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex.Crim.App.1993).

■ Consistent with due process, a guilty plea must be made with a clear understanding of direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 748, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). All states currently require registration of sex offenders to some degree. *Smith and Botelho v. John Doe*, 538 U.S. 84, 89–90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164, 174 (2003). As recidivism is known to be particularly high among sex offenders, *McKune v. Lile*, 536 U.S. 24, 32–33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), such legislation is enacted as a public safety measure, the purpose being, generally, to permit law enforcement to keep track of felons who are likely to reoffend. Such laws have been repeatedly,

and unsuccessfully, attacked on constitutional grounds. *See, e.g., Smith and Botelho, supra; Connecticut Dep't of Public Safety, et al. v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

At the time of appellant's trial, Tex.Code of Crim. Proc., art. 26.13, did not require admonition as to the sex-offender-registration requirement; that admonition requirement was enacted and became effective in 1999. Acts 1999, 76th Leg., § 1, eff. Sept. 1, 1999. There was, therefore, no violation of a statutory duty to admonish.

The court of appeals relied on *Cuthrell, supra,* to find that registration is a collateral consequence and that failure to admonish does not, therefore, invalidate a plea. However, *Cuthrell's* premise raises questions. Why is the distinction made on the basis of effect on the *range* of punishment? The range of punishment is set by law. If we require that a plea of guilty affect the *range* of punishment, very few consequences will ever be direct.

Why must the effect be immediate? A person who pleads guilty to a felony may not legally possess a firearm for five years after release from confinement, supervision, or parole. Texas Pen.Code, § 46.04. The consequence that flowed from the plea of guilty, prohibition on possession of a firearm, is definite and completely automatic, but is not immediate because release on parole or from supervision or confinement is not immediate. That prohibition is certain from the moment of sentencing; when the defendant is paroled or released from confinement or supervision, he cannot legally possess a firearm. The consequence is the prohibition, not whether a future prosecution may result if the prohibition is violated. The same is true of the registration requirement; the conse-

quence flows from the plea of guilty to an enumerated offense, is definite and completely automatic, although it may or may not be immediate, as persons on community supervision are also required to register,[1] and the consequence is the required registration, not a potential subsequent and unrelated prosecution for failure to register.

Furthermore, *Cuthrell* is internally inconsistent. In *dicta, Cuthrell* finds that failure to tell a defendant that he will not be eligible for parole makes the plea involuntary because "the right to parole has become so engrafted on the criminal sentence that such right is 'assumed by the average defendant' and is directly related in the defendant's mind with the *length* of his sentence." *Cuthrell* at 1366 (emphasis added). That is, *Cuthrell* says that parole eligibility is a direct consequence of the plea, even though parole eligibility does not have a "definite, immediate and largely automatic effect on the *range* of the defendant's punishment." *Id.* (emphasis added). It does not have even a definite, immediate and largely automatic effect on the *length* of the sentence or the time actually served. Parole is not immediate; it is not automatic; neither its terms nor the time of granting are definite. Yet *Cuthrell* says that it is a direct consequence of the plea. It seems obvious that the *Cuthrell* definition was not followed even in *Cuthrell.*

A survey of sixty federal cases and eighty-nine state cases which cite to *Cuthrell* shows only four federal cases that follow it, and all four use the citation only for support of general, widely accepted classifications of collateral consequences, such as later use of a conviction to enhance the punishment of a subsequent offense.

---

1. Texas Code Crim. Proc., art. 62.02. "A person who has a reportable conviction or adjudication or who is required to register as a condition of parole, release to mandatory supervision, or community supervision shall register...."

The United States Court of Appeals for the Sixth Circuit noted that the authorities cited by *Cuthrell* are all federal cases decided under Rule 11.[2] *Armstrong v. Egeler*, 563 F.2d 796, 800 (6th Cir.1977).

Four of eighty-six non-Texas state-court decisions have also followed *Cuthrell*, again all as authority for describing as collateral consequences such things as deportation, later use of the conviction for enhancement or impeachment, and loss of government benefits.[3]

Three Texas decisions cite to *Cuthrell*. In one case, the cite to *Cuthrell* appears in a footnote. *In re E.J.G.P.*, 5 S.W.3d 868, 872 fn. 12 (Tex.App.El Paso 1999). *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim.App.1997), addressed a claim of ineffective assistance of counsel for failure to inform the defendant of the possibility that his plea could be used to impeach him in a later trial and cited *Cuthrell* for the proposition that a consequence is collateral "if it is not a definite, practical consequence of a defendant's plea."[4] The third case, *Ruffin v. State*, 3 S.W.3d 140, 143 (Tex.App.-Houston [14th Dist.] 1999) (pet. ref'd), also addressed a claim of ineffective assistance of counsel, and the underlying issue was registration as a sex offender. *Ruffin* cites to *Morrow*, but uses *Cuthrell's* standard.

Further, in its discussion of whether registration is a direct or collateral consequence, the *Ruffin* court falls into the trap that many other courts before it have fallen into; it confounds the duty to register with the possible consequences for failure to register. It states that, based on the definition found in *Cuthrell*, the registration requirement is a collateral effect, but its analysis reveals that its decision is based not on the required registration, but on what might happen if a defendant failed to comply.

After conceding that "appellant will be required to so register when he is discharged or paroled" (automatic), the *Ruffin* court then holds that, because "appellant is not required to register until some unknown date, which is contingent upon his release from confinement" (not immediate) and because there is no additional penalty or punishment for appellant related to the registration requirement unless he fails to comply with the statute" (no effect on range of punishment), the registration requirement is a collateral consequence.

---

2. Rule 11(d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or defendant's attorney.

3. Interestingly, one court quotes *Cuthrell*, but incorrectly. *People v. Ford*, 86 N.Y.2d 397, 657 N.E.2d 265, 267, 633 N.Y.S.2d 270 (N.Y. 1995) "A direct consequence is one which has a definite, immediate and largely automatic effect on defendant's punishment."

4. A consequence has also been defined as "collateral" where "it lies within the discretion of the court whether to impose it," or where "its imposition is controlled by an agency which operates beyond the direct authority of the trial judge." *United States v. Kikuyama*, 109 F.3d 536, 537 (9th Cir.1997) (citation and internal quotations omitted). *See also*, *United States v. Kikuyama*, 109 F.3d at 537 ("A consequence" has been defined as direct where it is "definite, immediate and largely automatic.") (citation and internal quotations omitted); *United States v. Salerno*, 66 F.3d 544, 551 (2nd Cir.1995) (same); *People v. Ford*, 86 N.Y.2d 397, 657 N.E.2d 265, 267, 633 N.Y.S.2d 270 (N.Y.1995) (same); *State v. Barton*, 93 Wash.2d 301, 609 P.2d 1353, 1356 (Wash.1980) (same).

While the finding that the consequence had no immediate effect in *Ruffin* may be correct in that case, we must consider the effect of our decisions on all cases. As noted above, persons who are granted community supervision, and who are thus immediately affected, also must register. Thus that portion of the *Ruffin* analysis must be disregarded. Also as noted above, if the consequence must affect the *range* of punishment, no consequence is direct.

The outcome in *Cuthrell* was ultimately correct, but only because the complained-of consequence, possible confinement to a mental institution for assessment and treatment, was speculative; "he *might*, as a result of the judgment in an entirely separate civil proceeding, ... be committed ... for treatment and not punishment...." *Id.* (emphasis in original). The consequence was neither definite nor largely automatic; any future confinement did not flow from the plea, but from unrelated factors, including his mental health. *Cuthrell* spoke of "could" and "might," while the consequence in this case is expressed in terms of "must" and "shall."

 We hold that, if the consequence is definite and largely or completely automatic, then it is a direct consequence. This standard is close to the standard set out in *Morrow;* a direct consequence is one that is "a definite, practical consequence of a defendant's plea." Here, the consequence, registration as a sex offender, is definite. It is also completely automatic; if a defendant pleads to an enumerated offense, he must register; there are no exceptions, no wiggle room, no conditions which relieve him of that obligation. The consequence is also "practical" in the sense that it is logically connected to the plea.

Even if the consequence is direct, however, imposition of it without admonishment might still be justified as remedial

and civil rather than punitive. *See, e.g., Smith and Botelho v. John Doe,* 538 U.S. 84, 89–90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164, 174 (2003). In a case involving the sex-offender registration requirement as applied to juveniles, the Sixth Court of Appeals said:

> Our view of the law leads to the following conclusions: a statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions.

*In the Matter of B.G.M.,* 929 S.W.2d 604, 606 (Tex.App.-Texarkana 1996)(quoting *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995)).

Using that rationale, we note that there are a number of direct consequences of a plea of guilty, such as the loss for a period of years of the right to vote and the right to possess firearms, ineligibility for certain professional licenses, etc., that do not necessarily render an otherwise voluntary plea involuntary by the failure of the trial court to admonish a defendant of each of those direct, non-punitive consequences. These are matters that neither involve the nature of the sentence that could be imposed nor are the direct, punitive consequences about which the trial court must admonish a defendant. They are matters that address the need for the protection of the public good. Failure to admonish as to such matters does not invalidate an otherwise voluntary plea.

 The presumption of a constitutionally voluntary plea may, of course, be rebutted. Generally, failure to admonish properly under art. 26.13 is subject to a harm analysis. *Matchett v. State,* 941

S.W.2d 922, 927–30 (Tex.Crim.App.1996). Art. 26.13(c) states explicitly that "substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonitions of the court."

A defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and art. 26.13,[5] is presumed to have entered a voluntary and knowing plea. A trial court is not required to admonish a defendant about every possible consequence of his plea, direct or collateral, only about those direct consequences that are punitive in nature or specifically enunciated in the law. *See,* TEX. CODE CRIM. PROC., art 26.13. *See generally,* WAYNE R. LaFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 20.4(d), at 805–06 (1985).

We hold that, although the sex-offender registration requirement is a direct consequence of appellant's plea, it is a nonpunitive measure, and failure to admonish does not necessarily render a plea involuntary. Appellant has not shown any harm resulting from his asserted lack of knowledge as to the registration requirement. Moreover, the record contains testimony from several witnesses who discussed the registration requirement and its applicability to appellant. We hold that the failure to admonish appellant as to a direct, nonpunitive consequence of his plea, specifically, the sex-offender-registration requirement, did not violate due process or render his plea involuntary.

We affirm the judgment of the court of appeals.

WOMACK, J., concurs in the result.

KELLER, P.J., filed a concurring opinion in which WOMACK, HERVEY and COCHRAN, JJ., join.

MEYERS, J., filed a concurring opinion.

KELLER, P.J., filed a concurring opinion in which WOMACK, HERVEY and COCHRAN, JJ., joined.

Appellate courts ought to use a two-step inquiry for determining whether a consequence is "direct" or "collateral" for voluntariness purposes:

(1) Is the consequence punitive or remedial in nature? If the consequence is remedial, then it is "collateral" and the inquiry ends.[1] If the consequence is punitive, then go to step two.

---

5. At the time of appellant's conviction, art. 26.13 required admonitions as to range of punishment (§ (a)(1)), that a plea bargain-agreement was not binding on the court (§ (a)(2)), that if the punishment assessed by the court does not exceed the terms of the plea bargain agreement, the right to appeal is limited (§ (a)(3)), and the possibility of deportation (§ (a)(4)). Since appellant's conviction, the legislature has amended art. 26.13 to require that defendants must also be admonished, if appropriate, of their duty to register as sex offenders under chapter 62 (§ (a)(5)). Trials courts should not be faulted for failing to give admonishments that are not required. *See, e.g., Ladd v. State,* 3 S.W.3d 547, 570 (Tex.Crim.App.1999)(no error in failure, prior

to legislative mandate, to include in jury instructions in a capital murder trial the minimum time which must be served before defendant would become eligible for parole).

1. *See Nollette v. State,* 118 Nev. 341, 46 P.3d 87, 89–90 (2002)("A majority of jurisdictions that have considered the issue hold that sex offender registration is a collateral consequence of a guilty plea. Most of these holdings are based on the conclusion that registration requirements are not punitive, but instead serve a regulatory or remedial purpose.")(citing cases and law review article); *see also United States v. Russell,* 686 F.2d 35, 38 (D.C.Cir.1982)(discussing and citing cases on whether deportation is "punish-

(2) Is the consequence definite and automatic? If the answer to that question is "yes," then the consequence is "direct." If the answer is "no," then the consequence is "collateral."

Because sex offender registration is remedial, it is necessarily a collateral consequence, and there is no need to determine whether it is definite and automatic.[2] Consequently, failure to give this information does not render a guilty plea involuntary. With these comments, I concur in the Court's judgment.

MEYERS, J., filed a concurring opinion.

The Court of Appeals found that because sex-offender registration was a collateral consequence, the trial court's failure to admonish appellant did not violate due process. On petition for discretionary review, appellant disagrees, arguing that sex-offender registration is a direct consequence, thereby making his plea invalid because the trial court failed to inform him of the requirement. The issue for which we granted review stated that because appellant was not informed by the court of a direct consequence of his plea, the plea was not voluntary, thus violating due process. The majority considers whether sex offender registration is a collateral or direct consequence and agrees with appellant that it is a direct consequence, but states that failure to admonish does not necessarily render a plea involuntary.

As the majority mentions, this case is pre-statute and thus there was no violation of a statutory duty to admonish appellant regarding the sex-offender registration requirement. Even statutory admonishments are not constitutionally required, but because their purpose is to assist the trial court in determining whether a plea was voluntary, failure to give a statutory

admonishment may violate due process. However, even in the absence of a statute, a plea may be rendered involuntary.

The test is not whether the consequence is direct or collateral, rather whether knowledge of the consequence would alter appellant's plea. For some appellants, collateral consequences may have more of an effect on the way they plead than direct consequences. Thus, we should consider only whether the failure to admonish rendered appellant's plea involuntary and violated due process and not whether sex-offender registration is a direct or collateral consequence. The question is whether there was a due process requirement that appellant be informed of his duty to register as a sex offender prior to the statute and whether failure to admonish would have the consequence of altering the voluntariness of the plea. Because this is a non-constitutional error, it is unlikely that the failure to admonish would render the plea involuntary, however, I disagree with the majority's assessment that the distinction between collateral and direct consequences is the correct demarcation point. We don't have to decide whether sex-offender registration was a direct or collateral consequence of the plea, only whether the trial court is required to tell appellant about the requirement in order to make the plea voluntary so that due process is not violated.

Although I disagree with the majority's disposition of this case, I agree that appellant's plea was voluntary and the failure to admonish did not violate due process.

---

ment" in connection with determining whether it is a collateral consequence).

**2.** *Rodriguez v. State,* 93 S.W.3d 60 (Tex.Crim. App.2002); *Nollette, supra.*