

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0145-09

## EX PARTE JOHN CHRISTOPHER COVEY, JR., Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### NOLAN COUNTY

**COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.**

## OPINION

I agree that appellant is entitled to relief, although I have serious doubts that his trial

attorney provided constitutionally deficient assistance. This is a case in which nobody–not

appellant, his trial or habeas attorney, the trial judge, or the prosecutor–was quite correct in

his understanding of the sex-offender-registration laws. From the very beginning until after

the conclusion of the hearing on the habeas corpus application, all of the participants

erroneously believed that applicant had an obligation to register as a sex offender for life.

Furthermore, from the very beginning until after the conclusion of the plea proceeding, all

of the participants erroneously believed that the trial judge had the discretion to terminate the sex-offender-registration requirement early.[1]  I have a difficult time swallowing the finding that appellant's trial attorney was constitutionally incompetent if the prosecutor and trial judge had precisely the same misunderstanding about the law that he did.

It was not until the prosecutor investigated the sex offender registration statutes more carefully on direct appeal that the "correct" law was discovered.[2]  Appellant does not have a lifelong obligation to comply with the sex offender registration requirements.  Under Texas

---

[1] Indeed, the trial judge innocently, but erroneously, compounded the problem when appellant asked, "It says that there's a chance of getting taken off of the sexual offender earlier than probation is up.  What's–what are the rules on that?"

The trial judge responded: "Discretionary with the Court.  So, there's not like a checklist that you can do and automatically get anything done.  There are really no promises to you other than that it's subject to being reviewed."

Earlier in the hearing, appellant had asked whether the rule prohibiting him from using the Internet might be changed in the near future.  The trial judge told him the following:

Any of these rules could change.  They could be lifted; there could be more restrictions placed on you while you're on probation.  It's certainly something that is reviewed, but there are no guarantees, so you might just have the mind set this is the way it's going to be.  If it gets better, great; if it doesn't, you're not–I don't want you to feel like you were tricked in any way.  Expect the worst as far as what these restrictions are on you, and if something else works out—

Appellant then asked, "Who changes those restrictions?"  And the trial judge responded, "I do."

It is no wonder that appellant believed that he had a chance to apply for, and might receive, early termination of the sex offender registration requirement if he complied faithfully with all of the requirements of his community supervision.  During this plea hearing, appellant explained that the incident for which he was indicted occurred while he was so intoxicated that he had no memory of the event, so he could not defend himself.  He stated that he had been "sober" for eight months, and thus he might reasonably think that he would be a good candidate for early termination if he continued to address his drinking problem.

[2] State's Brief on Direct Appeal at 3 ("[A]ppellant is not subject to lifetime registration as attempted sexual assault is not a sexually violent offense, nor does it fall into any other category requiring lifetime registration.  A deferred adjudication for attempted sexual assault falls into the category that requires registration for ten years after release from community supervision.").

law, his obligation lasts for the duration of the community-supervision period–eight years–plus ten years thereafter.[3]   Indeed, as the court of appeals noted, "This mistake by [habeas] counsel [that appellant had a lifelong registration requirement] indicates that appellant's original counsel's advice was within the range of competence demanded of attorneys in criminal cases."[4]   In other words, numerous reasonable attorneys make mistakes in deciphering the sex offender registration requirements.  They are very complex.

I also agree with the prosecutor and the court of appeals that appellant is not necessarily precluded from filing for and obtaining early termination of his sex offender registration requirements under article 62.402-62.408[5] before the end of the current eighteen-year registration obligation.  Apparently, the Council on Sex Offender Treatment has not published a list of reportable offenses for which one could request early termination, but that is not to say that appellant would definitely never qualify for release under the subchapter dealing with early termination if the law changes during this period.[6]

---

[3]TEX. CODE CRIM. PROC. art. 62.101(b).

[4] *Covey v. State*, No. 11-08-00190-CR, 2008 WL 5205641 at *3 n.1 (Tex. App—Eastland, Dec. 11, 2008) (not designated for publication).

[5]TEX. CODE CRIM. PROC. art. 62.401-62.408.

[6]TEX. CODE CRIM. PROC. art. 62.401-62.408.  The court of appeals noted that "appellant has not shown that he is precluded from filing a motion for early release during the eighteen years." *Covey*, 2008 WL 5205641, at *7.  It would seem that, under art. 62.402, the Council is required to publish only a list of those Texas offenses for which the minimum registration period exceeds that assessed under federal law.  If the minimum is the same or less than the federal requirement, there is no need to list the offense.  For attempted sexual assault, the registration periods are the same under state and federal law–ten years after release from prison, parole, or community supervision.  42 U.S.C. § 14071(6) (A).  Thus, it would appear that appellant cannot

That said, the trial judge entered written findings of fact that would support both a finding of ineffective assistance of trial counsel and a finding of detrimental reliance upon his "erroneous" advice.[7]  Apparently, the only reason that the trial judge did not grant relief on appellant's writ application was that he concluded that sex offender registration was "of such a non-punitive nature" that appellant was not "harmed" by his counsel's erroneous advice.[8]  I disagree with that legal conclusion because "harm" is not really the correct issue in this context.

When a defendant challenges the voluntariness of his plea, arguing that he entered that

---

request early termination of the sex-offender-registration requirement under subchapter I unless the legislature changes these statutes within the next eighteen years, with sex-offender-registration laws becoming more or less onerous as public policy and social attitudes shift over time.

[7] The Court quotes, and relies upon, findings 3, 6, and 7.  *See* Slip. Op. at 5-6.

[8] The trial judge ended the habeas hearing by stating:
> And the fact that the defendant was under the impression and that impression confirmed that there was a possibility he could be released from what he knew to be a life-time registration, a possibility, certainly didn't indicate it was guaranteed he would be released, I certainly find that the Defendant's information and incorrect information was confirmed through defense counsel and from the Court, did nothing to clear that up.
> But, it being of such a non-punitive nature that based upon the testimony of the Defendant, the demeanor and the credibility of his testimony that this is something that I don't feel is – that the harm has been established to warrant granting the Defendant's Writ of Habeas Corpus, which is in all things denied.

The trial judge's written conclusions of law conclude with the following:
> Because the registration requirements of Chapter 62 C.C.P. are remedial and not punitive, and because relief under Art. 62.404 C.C.P. is speculative and furthermore, because Applicant believed that [a] jury would have convicted him, the legal significance of the bad advice complained of by Applicant is substantially discounted.  Under these circumstances, the bad advice is not sufficient to support a claim of involuntary plea.

plea based upon inaccurate or "legally bad" advice from his counsel, he must show that

> (1)    his counsel's claim was not within the range of competence demanded of attorneys in criminal cases; and

> (2)    there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty, but would have insisted upon going to trial.[9]

In his findings, the trial judge unequivocally stated, "If Applicant ha[d] not been erroneously advised, it is more probable than not that Applicant would have pleaded 'not guilty.'" And because this finding is clearly supported by the record, we should adopt it.[10]

Although the trial judge correctly noted that sex offender registration is a matter that the law categorizes as "non-punitive" and "remedial,"[11] the record shows that appellant believed that the sex offender requirements, especially registration, were both punitive and of primary importance to him in entering a plea to the attempted-sexual-assault charge.[12] His

---

[9] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999).

[10] *See Ex parte Reed,* 271 S.W.3d 698, 727 (Tex. Crim. App. 2008).

[11] *See Smith v. Doe*, 538 U.S. 84, 105-06 (2003) (concluding that Alaska's sex offender registration requirement was a non-punitive regulatory scheme that did not violate *ex post facto* clause); *Mitschke v. State*, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004) ("[A]lthough the sex-offender registration requirement is a direct consequence of appellant's plea, it is a non-punitive measure, and failure to admonish does not necessarily render a plea involuntary.").

[12] Appellant's original community-supervision requirements included the following:
16.    Defendant shall attend and participate in a sex offender treatment program as directed by the supervision officer. Defendant shall keep all appointments, follow all rules and regulations, and shall not cease participation in said program until released by the court.
17.    Register with your local municipal or county law enforcement agency as a sex offender within 7 days after being placed on probation as required by Article 6252-13C.1 R.S., and if you move to a new residence, or change employment, report any changes to the registering agency within 7 days;

position that the onerous registration requirement was personally punitive is supported by the record, especially because he believed that the registration requirement was lifelong. Given the draconian nature of the registration requirement and the obloquy, harassment, and even violence that frequently follows in the wake of public notification and internet availability of sex registrants' names, addresses, employers, etc., it is not surprising that appellant would rather roll the dice on a jury trial than sign up for what he believed to be the lifelong public disgrace of sex offender registration.

Therefore, I join the Court's opinion that appellant's plea was involuntary based upon

---

18. Each year, the defendant on or before his birthday, update his registration paperwork with the registering agency and continue until directed otherwise;

19. Defendant shall contact the Texas Department of Public Safety within 30 days from being placed on probation, to obtain his sex offender drivers license or ID card, and is to renew them on or before his/her birthday each year thereafter until told otherwise;

20. Defendant shall not reside in any household with any child, male or female, under seventeen (17) years of age. Written permission of this court is required to modify this order;

21. Defendant shall not supervise or participate in any employment or any program that includes as participants or recipients persons who are 17 years of age or younger and that regularly provides athletic, civic, or cultural activities;

22. Defendant shall not go into or within a distance of 1,000 feet of any premises where children commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility;

23. Defendant shall not use pornography or erotica or frequent adult book stores, sex shops, topless bars, massage parlors and like establishments;

24. Defendant shall attend the 32nd Judicial District CSCD sex offender counseling and pay counseling fees as directed;

29. Defendant shall not have access to a computer, web TV, PDA, smart phone, or any other device(s) that provide access to the internet unless written permission from the court is granted;

30. Defendant shall not have cable TV or satellite that [subscribes] to the premiere channels, i.e., HBO, Cinemax, Showtime, etc., that allows him/her to view pornographic or sexually explicit material[.]

his trial counsel's erroneous advice.

Filed: March 31, 2010

Do Not Publish